**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**ANHUI AIDO GARMENT COMPANY, LTD.,**
                    **Plaintiff,**                          **24-cv-1572 (JGK)**

        **- against -**                                     <u>**MEMORANDUM OPINION**</u>
                                                            <u>**AND ORDER**</u>
**PETER STERN, ET AL.,**
                    **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Anhui Aido Garment Company, Ltd. ("Aido"),
brought this action against the defendants, Peter Stern
("Stern"), Knitwork Productions II, LLC ("Knitwork"), American
Attitudes USA LLC ("American Attitudes"), and Express Trade
Capital, Inc. ("Express Trade"), (collectively, "the
defendants"), seeking to enforce and collect an approximately
$1.3 million default judgment. To collect the judgment, Aido
seeks to pierce the corporate veil against Stern and Express
Trade, and to collect from American Attitudes under a theory of
successor liability. Aido also alleges claims for actual and
constructive fraudulent transfer against Express Trade, American
Attitudes, and Stern, and a claim for unjust enrichment against
all the defendants. The defendants now move to dismiss the
operative complaint (the "Second Amended Complaint" or "SAC").
For the following reasons, the defendants' motion to dismiss is
**granted in part** and **denied in part**.

**I.**

The following description of the factual allegations in the Second Amended Complaint is accepted as true for purpose of the current motion.

Plaintiff Aido is a private limited company, organized in China, that manufactures garments. SAC ¶ 8, ECF No. 71. Defendant Stern is the sole owner of Defendant Knitwork; the owner, manager, and organizer of Defendant American Attitudes; and the owner, president, and chief executive officer of Defendant Express Trade. See id. ¶¶ 9-12. Knitwork, American Attitudes, and Express Trade all allegedly share an address: 1410 Broadway, 26th Floor, New York, NY. See id. ¶¶ 10-12.

In 2018, Aido and Knitwork entered into a contract whereby Aido agreed to supply garments to Knitwork in exchange for payment. Id. ¶ 25. Also in 2018, Stern acquired Knitwork and disbanded its board, ceased holding regular board meetings, and stopped keeping records or preparing financial statements. Id. ¶ 28. Knitwork placed its first order with Aido in August 2018. Id. ¶ 25. Between December 2019 and May 2020, Knitwork ordered approximately $1.3 million of garments from Aido without providing payment. Id. ¶¶ 43-70.

In January 2020, shortly after Knitwork began to place orders without payment, Stern formed American Attitudes. Id. ¶ 19. After each shipment of garments was delivered, Aido alleges

2

that Knitwork transferred the garments to American Attitudes at Stern's direction without fair consideration. See id. ¶¶ 37, 43–70. Aido alleges that Stern formed American Attitudes to assume Knitwork's operations while avoiding liabilities accrued by Knitwork. See id. ¶ 82. Aido further alleges that after Knitwork transferred garments to American Attitudes, Stern stripped Knitwork's remaining assets, including bank accounts, cash, chattel paper, inventory, and equipment, and transferred them to Express Trade without fair consideration. Id. ¶ 71.

In June 2020, Stern contacted Aido on behalf of Express Trade, seeking to order additional garments from Aido. See id. ¶ 78. During this interaction, Stern allegedly claimed to know nothing of Knitwork's debt to Aido, specifically asserting that: (1) "I know nothing about the order you mentioned"; and (2) "my company never worked with you before." Id. ¶ 79.[1] However, Stern also acknowledged that American Attitudes and Express Trade had hired Knitwork's employees, taken control of Knitwork's bank accounts, assumed Knitwork's business operations, and forgiven debts owed by Knitwork to Express Trade. See id. During this conversation, Aido repeatedly requested that Stern repay the $1.3 million debt that Knitwork owed to Aido. Id. ¶ 94. Stern

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

responded that he had no obligation to pay for the garments that Aido had delivered, and that Aido could recoup the money only by fulfilling additional orders with Express Trade and American Attitudes. Id.

Aido subsequently sued Knitwork in this District and obtained a default judgment for the approximately $1.3 million owed. See Anhui Aido Garment Co., Ltd. v. Knitwork Prods. II, LLC, No. 21-cv-1523, ECF No. 36. Aido now seeks to collect that judgment from Stern, Express Trade, and American Attitudes.

To that end, Aido seeks to pierce the corporate veil against Stern ("Count One"); pierce the corporate veil against Express Trade ("Count Two"); collect from American Attitudes pursuant to a de facto merger theory of successor liability ("Count Three"); collect from American Attitudes pursuant to a mere continuation theory of successor liability ("Count Four"); and collect from American Attitudes pursuant to a fraudulent transfer theory of successor liability ("Count Five"). Aido also asserts claims for constructive fraudulent transfer against Stern and American Attitudes for claims accruing prior to April 4, 2020 ("Count Six" through "Count Eight"); actual fraudulent transfer against Stern and American Attitudes for claims accruing prior to April 4, 2020 ("Count Nine"); actual fraudulent transfer against Stern, American Attitudes, and Express Trade for claims accruing after April 4, 2020 ("Count

4

Ten" and "Count Thirteen"); and constructive fraudulent conveyance against Stern, American Attitudes, and Express Trade for claims accruing after April 4, 2020 ("Count Eleven," "Count Twelve," and "Count Fifteen"). Finally, Aido asserts an unjust enrichment claim against all the defendants ("Count Sixteen") See generally SAC.[2] The defendants now move to dismiss each of these claims.

## II.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2008). The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the

---

[2] Aido filed its initial complaint on February 29, 2024. See ECF No. 1. On May 14, 2024, the Court granted Aido leave to amend. See ECF No. 41. Aido filed its First Amended Complaint ("FAC") on May 30, 2024. See ECF No. 48. The Court again granted leave to amend and on October 25, 2025, Aido filed the SAC—now the operative complaint. See ECF No. 71.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although the Court should accept the complaint's factual allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

### III.

The defendants move to dismiss the SAC, contending that: (1) Aido has not successfully alleged a claim for piercing the corporate veil against Stern or Express Trade; (2) Aido has not successfully alleged a claim for successor liability against American Attitudes under any of the three asserted successor liability theories; (3) Aido has not adequately alleged constructive or intentional fraudulent transfer claims pursuant to the N.Y. Debtor & Creditor Law ("DCL"); and (4) Aido has not alleged a claim for unjust enrichment against any of the defendants. Finally, the defendants contend that the SAC should be dismissed on res judicata grounds. The Court will address each of these arguments in turn.

### A. Piercing the Veil

The defendants move to dismiss Aido's claims for piercing the corporate veil to reach Stern and Express Trade. To pierce the veil under New York law, the plaintiff must show that "(1) the owner has exercised such control that the corporation has

6

become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to [the] plaintiff." Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410-11 (S.D.N.Y. 2012) (quoting Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1052 (2d Cir. 1997)); see also Morris v. N.Y. State Dep't of Tax'n & Fin., 623 N.E.2d 1157, 1160-161 (N.Y. 1993). Courts consider several factors when determining whether it is appropriate to pierce the corporate veil, including:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence . . .[;] (2) inadequate capitalization[;] (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes[;] (4) overlap in ownership, officers, directors, and personnel[;] (5) common office space, address and telephone numbers of corporate entities[;] (6) the amount of business discretion displayed by the allegedly dominated corporation[;] (7) whether the related corporations deal with the dominated corporation at arms length[;] (8) whether the corporations are treated as independent profit centers[;] (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group[;] and (10) whether the corporation in question had property that

was used by other of the corporations as if it
were its own."

Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933
F.2d 131, 139 (2d Cir. 1991); Freeman, 119 F.3d at 1053.

Veil piercing requires "a 'fact laden inquiry' and thus is
'unsuited for resolution on a pre-answer, pre-discovery motion
to dismiss.'" City of Almaty v. Ablyazov, 278 F. Supp. 3d 776,
799 (S.D.N.Y. 2017) (quoting Holme v. Glob. Mins. & Metals
Corp., 880 N.Y.S. 2d 873 (Table), 2009 WL 387034, at *7 (Sup.
Ct. Jan. 12, 2009)). Although conclusory allegations of control
are insufficient, "'setting forth some examples of alleged
domination may provide sufficiently specific factual allegations
to support an alter ego claim and result in denial of the motion
to dismiss.'" Id. (quoting SungChang Interfashion Co. v. Stone
Mountain Accessories, Inc., No. 12-cv-7280, 2013 WL 5366373, at
*11 (S.D.N.Y. Sept. 25, 2013)).

In this case, Aido has provided sufficient factual
allegations to support its veil piercing claims against Stern
and Express Trade. Aido alleges an "overlap in ownership"
between Knitwork and Express Trade. See SAC ¶¶ 111-12. Aido
alleges that Knitwork and Express Trade operated out of the same
office and used the same record and electronic information
systems. See id. ¶¶ 10-12, 39, 119. Aido also alleges that the
defendants did not deal with each other at arms-length because

8

Stern owned and controlled both Knitwork and Express Trade when Stern allegedly transferred Knitwork's remaining assets to Express Trade for inadequate consideration. Id. ¶¶ 113-15. Furthermore, Stern has allegedly forgiven certain of Knitwork's debts to Express Trade. Id. ¶ 88. Finally, Aido alleges that when Stern acquired Knitwork, Knitwork ceased to observe corporate formalities—for example, by disbanding the board and failing to keep records. Id. ¶ 28. Although, Aido alleges some facts that are merely conclusory, like its assertion that Stern "dominates" the relevant entities, see id. ¶¶ 81, 84, 97, it has alleged sufficient non-conclusory facts to support its contention that Knitwork was a mere instrumentality of Stern and Express Trade. Moreover, Aido has adequately alleged that Stern and Express Trade used their domination of Knitwork and the absence of corporate formalities to harm Aido by rendering Knitwork a judgment-proof shell.

Accordingly, the defendants' motion to dismiss Aido's veil piercing claims against Stern and Express Trade is **denied.**

### B. Successor Liability

The defendants also move to dismiss Aido's attempt to collect the judgment against Knitwork from American Attitudes under a theory of successor liability. "To state a claim based on successor liability, a plaintiff must plead enough facts for the Court to infer that one of the exceptions to 'the general

9

rule finding that a business entity acquiring the assets from another business generally results in no successor liability,'" applies. New York v. Town of Clarkstown, 95 F. Supp. 3d 660, 682 (S.D.N.Y. 2015) (quoting City of Syracuse v. Loomis Armored US, LLC, 900 F. Supp. 2d 274, 288 (N.D.N.Y. 2012)). These exceptions include where, "(1) [the successor corporation] expressly or impliedly assumed the predecessor's tort liability[;] (2) there was a consolidation or merger of seller and purchaser[;] (3) the purchasing corporation was a mere continuation of the selling corporation[;] or (4) the transaction is entered into fraudulently to escape such obligations." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). "The successor issue is highly fact-specific and typically cannot be determined as a matter of law." Martin Hilti Family Tr. v. Knoedler Gallery, LLC, 386 F. Supp. 3d 319, 352 (S.D.N.Y. 2019).

Aido does not contend that American Attitudes satisfies the first of these exceptions, i.e., that it "expressly or impliedly assumed" Knitwork's tort liability. See Nat'l Serv., 460 F.3d at 209. However, Aido has adequately alleged that American Attitudes is liable as a successor to Knitwork pursuant to the "de facto merger" exception. The de facto merger exception applies where "a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'" Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41,

45 (2d Cir. 2003) (quoting Schumacher v. Richards Shear Co., Inc., 451 N.E.2d 195, 198 (N.Y. 1983)). New York law recognizes the following hallmarks of a de facto merger:

> (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) a continuity of management, personnel, physical location, assets, and general business operation.

Martin Hilti, 137 F. Supp. 3d at 451 (quoting Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07-cv-489, 2007 WL 3253592, at *3 (S.D.N.Y. Nov. 2, 2007)). "[N]ot all of these elements are necessary to find a de facto merger." Id. However, "the doctrine cannot apply absent continuity of ownership, which is the essence of a merger." Audio Emotion S/A v. McIntosh Grp., Inc., 707 F. App'x 729, 731 (2d Cir. 2017) (summary order).

Aido alleges facts supporting each of these factors, including continuity of ownership under Stern, see SAC ¶ 130, cessation of ordinary business by Knitwork, see id. ¶ 35, and continuity of personnel, office location, and business operation, see id. ¶¶ 79, 137. To the extent that the defendants argue that Aido must identify particular bank accounts or names of employees, the defendants misstate the plaintiff's burden on a motion to dismiss. Accordingly, the defendants' motion to dismiss Count Three is **denied.**

In Count Four, Aido alleges a claim for successor liability against American Attitudes pursuant to the "mere continuation" exception. Although "routinely listed separately, [the mere continuation and de facto merger exceptions] are often regarded as so similar as to be considered a single exception." Douglas v. Stamco, 363 F. App'x 100, 102 (2d Cir. 2010) (summary order). However, "[t]he mere continuation exception applies where 'it is not simply the business of the original corporation which continues, but the corporate entity itself' and there is a 'common identity of directors, stockholders, and the existence of only one corporation at the completion of the transfer.'" Silverman Partners LP v. Verox Grp., No. 08-cv-3103, 2010 WL 2899438, at *5 (S.D.N.Y. July 19, 2010) (quoting Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626-27 (S.D.N.Y. 2007)).

The parties dispute whether, under the mere continuation exception, the predecessor corporation may continue as a shell or whether it must be formally extinguished. The New York Court of Appeals has held that the mere continuation exception applies "where only one corporation survives the transaction; the predecessor corporation must be extinguished." Schumacher, 451 N.E.2d at 198. In that case, the New York Court of Appeals held that because the defendant "survived the instant purchase agreement as a distinct, albeit meager, entity, the Appellate

Division properly concluded that [the successor company] cannot be considered a mere continuation of [the defendant]." Id.

Some courts in this District have concluded that Schumacher does not require formal dissolution of the predecessor corporation. See, e.g., Societe Anonyme, 2007 WL 3253592, at *6 ("[T]he mere continuation exception is satisfied when the predecessor transferred not only assets but also business location, employees, management and good will to the successor, even when predecessor continues to exist as a shell corporation."); Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp., 971 F. Supp. 2d 368, 380 (S.D.N.Y. 2013) ("Even though [the plaintiff] has not alleged formal dissolution, this defect is not detrimental . . . .").

However, the Appellate Division has distinguished between the de facto merger exception and the mere continuation exception on the basis that "[i]n de facto merger, unlike mere continuation, the dissolution criterion may be satisfied, notwithstanding the selling corporation's continued formal existence, if that entity is shorn of its assets and has become, in essence, a shell." Ring v. Elizabeth Found. for Arts, 25 N.Y.S.3d 173, 175 (App. Div. 2016) (emphasis added); see also Audio Emotion, 707 F. App'x at 732 (recognizing that "New York courts routinely hold that the continued existence of the predecessor entity is a bar to a mere continuation claim.").

13

The Court agrees with the view that the mere continuation exception requires that the predecessor corporation be formally extinguished, and in this case Aido does not contest that Knitwork continues as a shell. Because Knitwork remains registered with the New York Secretary of State, the mere continuation exception does not apply. Accordingly, the defendants' motion to dismiss Count Four is **granted.**

Finally, as the Court will address in Section C, Aido has also alleged sufficient facts to invoke the successor liability succession for "transaction[s] entered into fraudulently to escape [liability]." See <u>Nat'l Serv. Indus.</u>, 460 F.3d at 209. Thus, the defendants' motion to dismiss Count Five is **denied.**

In sum, the mere continuation exception does not apply and Count Four is therefore dismissed. However, Aido remains free to pursue its successor liability claims against American Attitudes under the de facto merger and fraud exceptions.

### C. Fraudulent Conveyance

The defendants next move to dismiss Aido's claims for constructive and actual fraudulent transfer brought pursuant to the DCL. Effective April 4, 2020, the DCL was amended to adopt the Uniform Voidable Transactions Act. "After April 4, 2020, what were once § 276 and § 273, capturing actual and constructive fraudulent conveyance, have now become § 273(a)(1) and § 273(a)(2), respectively." <u>Espire Ads LLC v. TAPP</u>

14

Influencers Corp., 655 F. Supp. 3d 223, 268 (S.D.N.Y. 2023).
Accordingly, Aido brings claims that accrued prior to the April
4 effective date under the former provisions (Counts Six through
Nine), and the claims that accrued after the effective date
under the current provisions (Counts Ten through Fifteen).

Under both the former and present versions of the DCL,
different pleading standards apply to different fraudulent-
transfer claims. See Red Rock Sourcing LLC v. JGX LLC, No. 21-
cv-1054, 2024 WL 1243325, at *40 (S.D.N.Y. Mar. 22, 2024)
(holding that claims under the amended § 273(a)(1) are "subject
to Rule 9(b)'s heightened pleading standards"); Bravia Cap. Hong
Kong Ltd. v. SL Green Realty Corp., No. 24-cv-2296, 2025 WL
552046, at *8 (S.D.N.Y. Feb. 18, 2025).

### 1. Constructive Fraudulent Conveyance

Aido has adequately alleged claims for constructive
fraudulent conveyance.

The current DCL provision allows plaintiffs to bring
constructive fraudulent transfer claims pursuant to DCL
§ 273(a)(2) or § 274(a) depending on whether the creditor is a
present or future creditor. Under the current version of DCL
§ 273(a)(2), a transaction is voidable as constructively
fraudulent as to present or future creditors if the debtor did
not receive reasonably equivalent value for the transfer and the
debtor either (i) was left with unreasonably small assets for a

business or transaction in which it was engaged or about to
engage or (ii) intended to incur or believed that it would incur
debts beyond its ability to repay as those debts came due. See
DCL § 273(a)(2). Meanwhile, under the current version of DCL
§ 274(a), a transfer is constructively fraudulent as to current
creditors when the debtor did not receive reasonably equivalent
value, and the debtor was already insolvent or was rendered
insolvent as a result of the transaction. See id. § 274(a).

Under the prior version of the DCL, plaintiffs can bring
constructive fraudulent transfer claims under DCL §§ 273, 274 or
275.[3] Under former DCL § 273, a conveyance is constructively
fraudulent where "two separate elements are satisfied: first, it
is made without fair consideration, and second, the transferor
is insolvent or will be rendered insolvent by the transfer in
question." United States v. Watts, 786 F.3d 152, 164 (2d Cir.
2015). Meanwhile, under former DCL § 274, a conveyance is
constructively fraudulent when it is made without fair
consideration and "when the person making it is engaged or is
about to engage in a business or transaction for which the
property remaining in his hands after the conveyance is an
unreasonably small capital." See DCL § 274 (repealed 2020).

---

[3] Former DCL § 273 covered conveyances by insolvent creditors.
Former § 274 covered conveyances by "persons in business."
Former § 275 covered conveyances by persons "about to incur
debts."

Finally, under former DCL § 275, conveyances are constructively fraudulent when made without fair consideration and where "the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature." See DCL § 275 (repealed 2020).

In this case, Aido has adequately alleged the elements of constructive transfer under both the current and former versions of the DCL. Aido has adequately alleged that the transfers of garments and Knitwork's other remaining assets–to American Attitudes and Express Trade, respectively–were made without fair consideration and without receiving reasonably equivalent value. See SAC ¶¶ 41, 71. Moreover, Aido adequately alleges that these transfers rendered Knitwork insolvent, see DCL § 274(a); id. § 273 (repealed 2020), with unreasonably small capital, see DCL § 273(a)(2); id. § 274 (repealed 2020), and debts beyond Knitwork's ability to pay, see DCL § 274(a); id. § 275 (repealed 2020).

The defendants do not dispute that Aido has adequately alleged lack of fair consideration or the other elements of a constructive fraudulent transfer claim. Instead, the defendants contend that Aido failed to allege clearly a "transferee," as required by the relevant provisions. However, the Second Amended Complaint makes clear that between December 2019 and May 2020, Knitwork transferred garment deliveries to the newly created

17

American Attitudes, and that shortly after the last garment transfer, Knitwork transferred the remainder of its assets to Express Trade. See SAC ¶¶ 41, 71. Moreover, Aido alleges that Stern dominated and controlled transferees, Express Trade and American Attitudes, at the time of the transfers. See Elgin Sweeper Co. v. Melson Inc., 884 F. Supp. 641, 651 n.15 (N.D.N.Y. 1995) ("If the jury determines after trial that the defendant had the requisite control to apply the alter ego doctrine, it will be irrelevant whether [he] was a transferee.").

Next, the defendants contend that, as an unsecured creditor, Aido has failed to allege that it suffered an injury. "To challenge a conveyance as fraudulent, a plaintiff must suffer prejudice or injury as a result of the conveyance at issue." Chemtex, LLC v. Anthony Enters., Inc., 490 F. Supp. 2d 536, 542 (S.D.N.Y. 2007). Thus, "[a] complaining creditor must first plead and then demonstrate that it had an equity stake in the debtor's assets—that is, that some portion of the debtor's assets would have been available to satisfy the unsecured creditor's claims had there been no conveyance." Id. The defendants contend that because Express Trade held a blanket lien on Knitwork's assets—securing a debt of more than $5 million, Aido—an unsecured creditor—could not have recovered from Knitwork ahead of Express Trade even absent the allegedly fraudulent transfer. However, as Aido observes, this argument

18

presents a question of fact, inappropriate for resolution on a motion to dismiss. See Tommy Lee Handbags, 971 F. Supp. at 368 ("On a motion to dismiss, courts limit the standing inquiry to whether the plaintiff alleging fraudulent conveyance was a creditor of the transferor."). Aido's allegations that it was a creditor of the Knitwork are sufficient to plead "standing" for the fraudulent transfer claims.

Accordingly, the defendants' motion to dismiss Aido's constructive fraudulent conveyance claims is **denied.**

### 2. Actual Fraudulent Conveyance

Aido has also adequately alleged claims for actual fraudulent conveyance. To plead a claim for actual fraudulent conveyance under the current DCL provisions, a creditor must allege that a debtor transferred property with "actual intent to hinder, delay, or defraud" its creditors. See DCL § 273(a)(1). The standard is substantially the same under the former law. See In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005) (observing that "a creditor must show intent to defraud on the part of the transferor" and that "actual intent to hinder, delay, or defraud constitutes fraud.").

To evaluate actual intent to defraud, courts look to "badges of fraud," including:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship, or close associate relationship between the parties; (3) the

19

> retention of possession, benefit, or use of
> the property in question; (4) the financial
> condition of the party sought to be charged
> both before and after the transaction in
> question; (5) the existence or cumulative
> effect of a pattern or series of transactions
> or course of conduct after the incurring of
> debt, onset of financial difficulties, or
> pendency or threat of suits by creditors; and
> (6) the general chronology of the events and
> transactions under inquiry.

Ford Motor Credit Co. v. Orton-Bruce, No. 14-cv-5382,

2017 WL 1093906, at *9 (S.D.N.Y. Mar. 22, 2017).

Aido has adequately alleged the elements of an actual

fraudulent conveyance claim. Specifically, Aido has alleged that

it was a creditor of Knitwork and that Knitwork transferred

garments and assets to American Attitudes and Express Trade. See

SAC ¶¶ 40-72. For the reasons discussed above, the defendants'

claim that Aido failed to specify the transferees is therefore

without merit. Moreover, Aido has adequately alleged that these

transfers were made with the requisite intent to defraud. Aido

has alleged the existence of several badges of fraud including,

but not limited to, the absence of fair consideration, see id.

¶¶ 41, 71, the close relationships between the parties, see id.

¶¶ 9-12, and the cumulative nature of the transactions, id.

¶¶ 40-70. Moreover, Aido's allegations satisfy the heightened

Rule 9(b) pleading standard.

Accordingly, the defendants' motion to dismiss Aido's

actual fraudulent conveyance claims is **denied.**

20

### D. Unjust Enrichment

The defendants next move to dismiss Aido's unjust enrichment claim. "The basic elements of an unjust enrichment claim in New York require proof that (1) [the] defendant was enriched[;] (2) at [the] plaintiff's expense[;] and (3) equity and good conscience militate against permitting [the] defendant to retain what [the] plaintiff is seeking to recover." Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004); Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2016).

The defendants do not dispute that the plaintiffs have adequately alleged the elements of an unjust enrichment claim. The defendants nevertheless move to dismiss, arguing that the unjust enrichment claim is duplicative of Aido's fraudulent transfer claim. "[U]njust enrichment is not a catchall cause of action to be used when others fail." Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (2012). It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. This is the case even when unjust enrichment is pleaded in the alternative. See In re Chantix (Varenicline) Mktg., Sales Practices and Prods. Liab. Litig. (No. II), 735 F. Supp. 3d 352, 400-01 (S.D.N.Y. 2024).

In this case, Aido's fraudulent conveyance claims, and its unjust enrichment claim arise out of the same set of facts. The

defendants contend that these claims are duplicative because the allegedly fraudulent transfers provide the only basis to conclude that the defendants were enriched by the garments delivered by Aido. However, unlike in cases where courts have found unjust enrichment claims duplicative, in this case, Aido could plainly "succeed on [its] unjust enrichment claim and fail on [its] other claims." See English v. Danone N. Am. Pub. Benefit Corp., 678 F. Supp. 3d 529, 540 (S.D.N.Y. 2023); see also In re Skat Tax Refund Scheme Litig., 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other."). Aido's actual and constructive conveyance claims could ultimately fail if Aido does not establish that the defendants acted with actual intent to defraud—for actual fraudulent conveyance—or fails to establish that the transfers were made without fair consideration—for constructive fraudulent conveyance. Accordingly, the claims are not duplicative and may be pleaded in the alternative.

The defendants also contend that the unjust enrichment claim against Express Trade fails because Aido has not alleged a sufficiently close relationship between Express Trade and Aido. In Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1111 (N.Y. 2011), the New York Court of Appeals held that "[a]though privity is not required for an unjust enrichment claim, a claim

22

will not be supported if the connection between the parties is too attenuated" and determined that "under the facts alleged, there [were] no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties." See also Georgia Malone & Co. v. Rieder, 973 N.E.2d 743, 747 (N.Y. 2012). In this case, Aido alleges that it had a contractual relationship with Knitwork—a company under common control with Express Trade and which shared offices with Express Trade. Aido further alleges that, as part of the alleged fraud, Stern reached out to Aido on behalf of Express Trade to attempt to negotiate another deal. SAC ¶¶ 10–12, 78–94. Thus, the relationship between Aido and Express Trade is not too attenuated to support a claim for unjust enrichment on a motion to dismiss.

Accordingly, the motion to dismiss the plaintiff's unjust enrichment claim is **denied.**

### E. Res Judicata

Finally, the defendants contend that the Second Amended Complaint should be dismissed on res judicata grounds because Aido should have brought its claims against Stern, Express Trades, and American Attitudes as part of its earlier action in this District. "Res judicata will bar subsequent litigation if the earlier decision was (1) a final judgment on the merits[;] (2) by a court of competent jurisdiction[;] (3) in a case

23

involving the same parties or their privies[;] and (4) involving the same cause of action." Overview Books, LLC v. United States, 438 F. App'x 31, 33 (2d Cir. 2011) (summary order). Also called claim preclusion, parties may invoke res judicata where "a party seeks to relitigate a claim, or cause of action, arising out of the same transaction or series of transactions which were raised or could have been raised in a prior litigation." Aghaeepour v. N. Leasing Sys., Inc., 378 F. Supp. 3d 254, 265 (S.D.N.Y. 2019).

However, "[t]hat both suits involved essentially the same course of wrongful conduct is not decisive," and "res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002). Aido seeks different relief in this case than it sought in the previous case. Previously, Aido sought a judgment against Knitwork. Now, Aido seeks to recover that judgment from Stern, American Attitudes, and Express Trade—in part for their subsequent obstruction of Aido's attempt to collect—behavior which postdates the award of the judgment.

Moreover, as Aido notes in the Second Amended Complaint, Stern lied about his alleged ownership and control of Knitwork. SAC ¶¶ 78-79. Accordingly, Aido did not initially realize that it could assert claims against Stern, American Attitudes, and Express Trades. See Am. Federated Title Corp. v. GFI Mmgmt.

Servs., Inc., 39 F. Supp. 3d 516, 524 (S.D.N.Y. 2014) (finding
that res judicata did not bar a claim where "[the] [p]laintiff
state[d] it was unaware that the judgment debtors had
insufficient assets to pay the bankruptcy settlement until after
judgment was entered"). "[O]n [the] [d]efendants' theory, any
time a plaintiff sues a corporation, it would effectively be
required to join the corporation's owners or be barred from
later recovering on the judgment from the owners in a separate
veil-piercing action." Id.

**CONCLUSION**

The Court has considered all of the arguments raised by the
parties. To the extent not specifically addressed, the arguments
are either moot or without merit. For the foregoing reasons, the
defendants' motion to dismiss is **granted in part** and **denied in
part**. The Clerk is directed to close ECF Nos. 74 and 78.[4] The
parties should submit a Rule 26(f) Report by **June 27, 2025.**

**SO ORDERED.**

Dated: **New York, New York
June 12, 2025**

          **John G. Koeltl
United States District Judge**

---

[4] The application for oral argument on this motion is denied.